UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

DONNA MARIE HAYES,                    )
                                      )
            Plaintiff,                )
                                      )
v.                                    )    CIVIL ACTION NO.
                                      )    5:15-CV-241-BQ
                                      )    ECF
CAROLYN W. COLVIN,                    )
Acting Commissioner of Social Security, )
                                      )
            Defendant.                )

## REPORT AND RECOMMENDATION

Under 42 U.S.C. § 405(g), Plaintiff Donna Marie Hayes seeks judicial review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. The parties did not consent to the jurisdiction of the Magistrate Judge. In accordance with the order of transfer, the undersigned now files this Report and Recommendation.

## I. Statement of the Case

On February 10, 2014, Hayes and a vocational expert testified before the administrative law judge (ALJ). Hayes was represented by an attorney at the hearing. The ALJ determined on June 6, 2014, that Hayes was not disabled because she could perform jobs existing in significant numbers in the national economy. The Appeals Council denied Hayes's request for review on November 18, 2015. As such, the ALJ's decision became the Commissioner's final decision, and is therefore properly before the court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also*

1

*Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding the Commissioner's final decision incorporates the Appeals Council's denial of a claimant's request for review).

## II. Facts

Hayes claims she became disabled on April 1, 2012, at the age of forty-nine. Tr. 10, 15, 165, 172. She alleges her ability to work is greatly limited by diabetes mellitus, peripheral neuropathy, chronic lower back pain, thyroid problems, sleep disorder, carpal tunnel syndrome, and weakening eyesight. Tr. 12–17, 69, 87, 208–09. Hayes completed at least high school (Tr. 19, 62, 193), has worked as a cashier, and currently works part-time as a home health worker, monitoring a client to make sure he does not fall. Tr. 41–45, 193, 199–202. Most of her household chores and personal care are provided by her children or a neighbor. Tr. 36–39, 47, 209–10. Hayes drives on occasion, but claims she is limited by her weakened eyesight. Tr. 39.

## III. Standard of Review

A court reviewing the Commissioner's denial of social security benefits is limited to determining (1) whether the decision is supported by substantial evidence in the record and (2) whether the Commissioner applied the proper legal standards. *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Without reweighing the evidence or substituting its own judgment, a reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are treated as conclusive and will be affirmed. 42 U.S.C. § 405(g) (2016); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

## IV. Discussion

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(a)(1)(A). The Commissioner makes a disability determination by conducting a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2016); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If a disability determination is made at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

At the first four steps in the analysis, the claimant bears the burden of proof. *Id.* Once this burden is satisfied, the Commissioner bears the burden of showing the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

In this case, the ALJ determined: (1) Hayes had not engaged in substantial gainful activity since the alleged disability onset date; (2) Hayes had severe impairments of chronic lower back pain, obstructive sleep apnea, diabetes mellitus with peripheral neuropathy, carpal tunnel syndrome, hypertension, hypothyroidism, obesity, and major depression; and (3) Hayes did not have an

3

impairment or combination of impairments that met or medically equaled the severity of one of the

listed impairments in Appendix 1.  Tr. 12–13.  Following step three, the ALJ assessed Hayes's

residual functional capacity (RFC) and found that she had the RFC to perform sedentary work of

detailed but non-complex tasks, she could only occasionally perform postural activities (but could

not climb ladders, ropes, or scaffolds), she could occasionally perform fingering and handling, she

must avoid temperature extremes and hazards, and she needed to alternate standing or sitting at will.

Tr. 13.  At step four, the ALJ found that Hayes was unable to perform any past relevant work.  Tr.

19.  After considering testimony from a vocational expert as well as Hayes's age, education, work

experience, and RFC, the ALJ concluded at step five—using the Medical-Vocational Guidelines as

a framework—that Hayes was not disabled because she had acquired work skills from past relevant

work that were transferable to other work that exists in significant numbers in the national economy,

such as a telemarketer or information clerk.  Tr. 20.

Hayes argues on appeal the ALJ erred by:  (1) failing to find she had an impairment or

combination of impairments that met or medically equaled the severity of § 11.14 in Appendix 1;

(2) not obtaining a consultative mental examination to evaluate the impact depression had on her

RFC; and (3) failing to pose proper hypothetical questions to the vocational expert.  Pl.'s Br. 6, 12,

14.

### A.   The ALJ's Step Three Determination Is Supported by Substantial Evidence and Any Error In Not Examining Listing § 11.14 Was Harmless

Hayes argues the ALJ erred when he did not consider her diagnoses of diabetes mellitus with

peripheral neuropathy under § 11.14 of the Listing of Impairments in Appendix 1.  Pl.'s Br. 6–7; *see*

20 C.F.R. pt. 404, subpt. P, app. 1.  In his decision, the ALJ noted that he considered Listings 1.04

for Hayes's back pain and 12.04 for her depression, but made no mention of 11.14 regarding her peripheral neuropathy. Tr. 13. Hayes argues this was prejudicial error requiring reversal and remand. Pl.'s Br. 12.

Impairments included in the regulatory listings are acknowledged as severe enough to automatically preclude the claimant from substantial gainful activity. *Henson v. Barnhart*, 373 F. Supp. 2d 674, 684 (E.D. Tex. 2005) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Meeting an impairment in the listings serves as a "short-cut" for the claimant, and the impairment renders her *per se* disabled. *Elam v. Barnhart*, 386 F. Supp. 2d 746, 755 (E.D. Tex. 2005) (citing *Albritton v. Sullivan*, 889 F.2d 640, 642 (5th Cir. 1989)).

An ALJ's failure to identify a listed impairment and explain why the claimant's alleged impairments do not meet the criteria of the listing can be reversible error. *Audler,* 501 F.3d at 448. The ALJ, however, is not required to "do an exhaustive point-by-point discussion" of each claim. *Id.* Even when the ALJ fails to consider a listed impairment or explain why a listed impairment does not apply, the claimant still has the burden of proving she meets the requirements of the listing. *Id.* at 449. A claimant can prove an impairment meets or equivalently meets a listed impairment in Appendix 1 by showing she satisfies all of the specified medical criteria of that listing. *Selders v. Sullivan*, 914 F.3d 614, 619 (5th Cir. 1990) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

The Listing of Impairments includes "Peripheral neuropathies" with disorganization of motor function as described in § 11.04B despite prescribed treatment. 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.14 (effective Dec. 3, 2013).[1] Section 11.04B disorganization is "[s]ignificant and persistent

---

[1]There have been multiple revisions to and versions of the Listing of Impairments since the ALJ hearing in this case on February 10, 2014. The court's citations to the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1, are to the version effective from December 3, 2013, to February 25, 2014. *See Knotts v. Colvin*, No. 4:14-CV-692-A, 2015 WL 5547474, at *3 (N.D. Tex. Aug. 27, 2015) (holding that the Listing of Impairments in effect at the

Case 5:15-cv-00241-C   Document 20   Filed 11/04/16   Page 6 of 19   PageID 541

disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." *Id.* § 11.04B.   Section 11.00C further requires:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

*Id.* §11.00C. Hayes must show her impairment meets all of the above criteria in order to prove that she is disabled under § 11.14.

In support of her argument that she meets the § 11.14 requirements, Hayes lists numerous medical examinations between November 3, 2012, and January 24, 2014, noting numbness, tingling, burning, or pain in her hands and feet, limited reflexes, difficulty grasping objects with her hands, and instances of imbalance and falling. Pl.'s Br. 7–10.

On November 3, 2012, Joseph Bergman, M.D., performed a consultative examination on Hayes where she complained of several issues, including diabetes, bilateral carpal tunnel syndrome (CTS), and "intermittent numbness and tingling in her hands and feet." Tr. 292. Dr. Bergman noted that Hayes experienced tenderness and pain in many places and had limited mobility (difficulty walking and getting up and down from the exam table). Tr. 296. He also was unable to elicit reflexes in any tested area. *Id.* Dr. Bergman's impression was that Hayes had various limitations due to her back pain and "manipulative limitations on reaching, handling, feeling, grasping, [and] fingering" due to "tendonitis" such that she can only perform those actions "occasionally." Tr.

---

time of the ALJ hearing are the regulations applicable to the ALJ's decision).

15–16, 298.

Hayes went to Community Health Center of Lubbock on March 14, 2013, complaining of "burning and stinging" feet, numb fingers, and difficult holding and grasping things with both hands. Tr. 399. She also complained of "having lots of nerve pain" and "weakness in legs for 4 days." *Id.*

On March 28, 2013, Felix Morales, M.D., examined Hayes for "weakness in legs and pain in her feet for the past few months." Tr. 342. Hayes reported "a stinging pain that is present bilaterally on dorsal aspect of feet, around the ankles and up the posterior of her lower legs" and that she had "similar pain in her hand and wrists." *Id.* Dr. Morales also noted that Hayes's Neurontin medication helped her symptoms.[2] *Id.* Dr. Morales did not otherwise indicate any abnormal findings during this examination. Tr. 344. Hayes saw Dr. Morales again on April 24, 2013, for "peripheral neuropathy." Tr. 347. She complained of increasing, day-long pain and burning sensations. *Id.* Her Neurontin medication continued to offer some relief. *Id.* Dr. Morales's physical examination produced mostly normal results, showing only mild tibial skin changes. Tr. 349.

On May 7, 2013, Hayes presented to Texas Tech Physicians of Lubbock with neuropathic issues. Tr. 356. The examination was unremarkable and she had "Normal range of motion, Normal strength, [and] Normal gait." Tr. 357.

Later that month on May 22, 2013, she visited the Larry Combest Community Health & Wellness Center for a "second opinion due to her disability application." Tr. 335. There, she was noted as positive for back pain and peripheral neuropathy. *Id.* The provider identified her gait as "slowed and stooped." Tr. 336.

---

[2]Neurontin (Gabapentin) is a prescription medication used to treat pain from nerve damage and partial seizures. *See Medication Guide: Neurontin*, Food and Drug Administration (Sept. 2015), www.fda.gov/downloads/drugs/drugsafety/ucm229208.pdf.

On September 9, 2013, Dr. Morales examined Hayes for her unrelenting "burning pain," numbness on her sides, and falling. Tr. 361. Dr. Morales confirmed her peripheral neuropathy and noted she had a decreased range of motion. Tr. 362. He again examined Hayes on January 24, 2014, for "multiple medical issues," including peripheral neuropathy and falling. Tr. 406. Hayes said she did not feel like the Neurontin was working as well as before. *Id.* Dr. Morales noted she had abnormal balance, numbness, and tingling. *Id.* He also noted, however, that Hayes was not taking her medications as prescribed because of a lack of money. *Id.*

The ALJ considered these medical visits and examinations along with other evidence from the record.   An annual examination on July 31, 2012, listed Hayes's musculoskeletal and neurological conditions as unremarkable and "normal." Tr. 310. A follow-up examination on August 20, 2012, due to dizziness revealed that Hayes had not been taking her medications, but her symptoms were still mostly unremarkable and normal. Tr. 308–09. On January 17, 2013, she complained of dizziness and pain in her toes, feet, legs, and side. Tr. 306. The subsequent examination was mostly unremarkable and she was encouraged to take her medications. Tr. 306–07. Dr. Morales examined Hayes on July 23, 2013, for "worsening neuropathic pain." Tr. 365. Dr. Morales noted that her medication helps treat these symptoms. *Id.* The physical examination on that date only showed "mild tibial skin changes." Tr. 366. Finally, Hayes saw Dr. Morales on October 17, 2013, where she stated that the "burning sensation [had] become worse over her feet" and that her knees often feel like they are going to "give out." Tr. 420. Other than these complaints, however, Dr. Morales did not identify any abnormal findings. Tr. 420–22.

Overall, Hayes has not met her burden of proving she meets all the criteria for the peripheral neuropathy Listing § 11.14. Although the ALJ did not identify § 11.14 in his step three analysis, he

8

did cite considerable evidence in support of his conclusion that Hayes did not have an impairment or combination of impairments that meets or medically equals a listed impairment. *See Hurst v. Colvin*, 639 F. App'x 1018, 1021-22 (5th Cir. 2016) (holding that the ALJ's failure to consider a specific listing was harmless error where she also cited "considerable evidence" supporting her conclusion plaintiff did not meet the criteria for a listed impairment) (per curiam). Moreover, the ALJ considered Hayes's severe impairments in determining her RFC. This determination is also supported by substantial evidence.

Similarly, Hayes has not shown that she has "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station" required by the Listing of Impairments. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 11.04B, 11.14. The medical records show that any limitations in function or movement of her extremities were sporadic, and not significant and persistent. As explained by the ALJ, with the exception of "a few isolated notations of back pain and mild tibial skin changes, the remainder of the claimant's examinations were essentially unremarkable, which raises questions regarding the legitimacy of her subjective complaints of pain." Tr. 18. The fact that Hayes works up to fifteen hours a week also undermines her claim that she has been disabled since 2012. *See Wingnet v. Astrue*, No. MO-07-CV-017, 2007 WL 4975206, at *7 (W.D. Tex. Dec. 14, 2007) ("The ability to work while experiencing an impairment suggests that the impairment is not severe.").

The ALJ's step three determination is thus supported by substantial evidence and any error in not explicitly mentioning § 11.14 in his analysis was harmless. Procedures in an administrative proceeding do not need to be perfect as long as a party's substantial rights are not violated. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). An ALJ's procedural error at step three affects a

claimant's substantial rights only when the claimant appears to have met her burden of demonstrating that her impairment meets or equals a listing. *Audler,* 501 F.3d at 449. Because Hayes has not met her burden to prove that she meets or equals the § 11.14 peripheral neuropathy listing criteria, the ALJ's failure to include that listing in his analysis did not affect her substantial rights, and thus does not constitute reversible error.

**B.    The ALJ Did Not Err When He Refused to Order a Consultative Mental Examination, and the Use of the Incorrect Mental Standards in Hayes's RFC Assessment was Harmless Error**

Hayes next argues the ALJ erred when he did not order a consultative mental examination of Hayes and failed to follow the guidelines of Social Security Rulings (SSR) 96-8P and 85-15 to determine her RFC. Pl.'s Br. 12–13. Though no such examination occurred, the ALJ did find that Hayes had the severe impairment of "major depression." Tr. 12.

To determine a claimant's RFC, the ALJ considers the limiting effects of all of the claimant's impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The ALJ assesses a claimant's RFC between steps three and four of the disability analysis. *Perez v. Barnhart,* 415 F.3d 457, 461–62 (5th Cir. 2005). The claimant's RFC is based on her ability to meet the physical, mental, sensory, and other requirements of work. § 404.1545(a)(4). An individual's RFC represents her "*maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis." SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996) (emphasis original). The RFC determination is "the sole responsibility of the ALJ." *Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012); *see* § 404.1546. Only an RFC determination that is not supported by substantial evidence may be overturned. *See Dise v. Colvin,* 630 F. App'x 322, 323 (5th Cir. 2015).

The ALJ has a duty to fully and fairly develop the factual record relating to an applicant's claim for social security benefits. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

A claimant's mental limitations should be included in her RFC. SSR 96-8P, 1996 WL 374184, at *1. The RFC assessment outlines the claimant's "work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of [§§ 404.1545 and 416.945]." *Id*. The ALJ should consider a claimant's mental abilities in relation to her RFC by expressly considering the following functions: (1) "limitations in understanding, remembering, and carrying out instructions" and (2) "responding appropriately to supervision, co-workers, and work pressures in a work setting." § 416.945(c). Moreover, SSR 85-15 states as follows:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985).

In this case, after finding that Hayes had the severe impairment of major depression, the ALJ concluded that Hayes's mental impairments "have mildly restricted [her] activities of daily living, have created mild difficulties in maintaining social functioning, have resulted in moderate deficiencies in concentration, persistence or pace, and have not resulted in any episodes of decompensation." Tr. 18. The ALJ stated he gave Hayes the "benefit of all possible doubt regarding the impact of her mental impairments" upon her RFC, but that he did "not find that the objective medical evidence supports a finding of more than a moderate restriction in the area of concentration, persistence, or pace" and that she should be limited to detailed, but not complex, instructions and

11

tasks. Tr. 19. This description tracks the language of Listing § 12.00B, not 20 C.F.R. § 416.945(c) or SSR 85-15. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00B.

Hayes argues the ALJ did not meet his burden in properly determining her RFC as required by SSR 85-15. Pl.'s Br. 13. She asserts the ALJ should have ordered a consultative mental examination to specifically address the functional limitations described in § 416.94(c) and SSR 85-15. *Id.*

While a consultative examination may assist the ALJ in fully developing the factual record (§ 404.1517), the decision to order such an examination remains within the ALJ's discretion. *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). An examination need not be purchased "unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." *Id.* (citing *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). Furthermore, if the ALJ fails to fully develop the record, the claimant must "still show prejudice in the form of evidence before the district court that would have altered the outcome." *Norden v. Barnhart*, 77 F. App'x 221, 224 (5th Cir. 2003) (citing *Kane v. Heckler*, 731 F.2d 1216, 1219–20 (5th Cir. 1984)).

Here, the ALJ chose not to order a consultative mental examination. He considered the entire medical record before him and acknowledged that Hayes received "little mental health treatment" during her alleged disability period. Tr. 18. Between April 23, 2013, and August 14, 2013, she had ten counseling sessions, including two "no shows." Tr. 18, 375. Her treatment records from Dr. Morales show mostly unremarkable impressions concerning her mental condition. Tr. 18. While Dr. Morales found Hayes at times to be sad and tearful and suffering from hallucinations, he also observed her to be cooperative and non-suicidal, with normal judgment, and possessing the ability

to make sensible decisions. Tr. 17, 366. Other than these isolated findings, the ALJ observed that "the medical record does not contain any other specific mental health treatment." Tr. 18. The record also supports the ALJ's finding of no qualifying mental impairment in that Hayes works fifteen hours a week caring for and monitoring another person. Because ordering a consultative examination is within the ALJ's discretion, and based on the limited mental health treatment and diagnoses described in Hayes's records, the ALJ did not err when he did not order a consultative mental examination. Additionally, the court notes that, in an apparent effort to address the alleged hallucinations, Hayes decided of her own volition to quit taking medication prescribed for her depression. Tr. 361. To establish eligibility for Social Security benefits, e.g., in this case an alleged disability based on depression, the claimant normally must follow the prescribed treatment plan for that condition. *See* § 404.1530(a), (b). Hayes's failure to follow a prescribed course of treatment for the condition upon which she now claims disability provides a further basis for affirming the ALJ's decision. *See Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990) (concluding that even if the plaintiff was found to be disabled, he still could not recover benefits as he failed to follow the treatment regimen prescribed by his physicians, i.e., wearing a back brace).

Although the ALJ should have determined Hayes's mental RFC based on the functions described in SSR 85-15, his failure to do so constitutes harmless error. Hayes has not shown, and there is no indication in the record, that the ALJ's determination would have changed had he applied the correct standard. *See Newton*, 209 F.3d at 458 (holding that an ALJ's violation of an SSR is only reversible error if the claimant shows prejudice from the violation); *see also Smith v. Astrue*, No. 4:09-CV-494-A, 2010 WL 6268443, at *9 n.8 (N.D. Tex. 2010) ("Even assuming that the ALJ did not perform the function-by-function analysis required by SSR 96-8P and SSR 85-15, any error is

not prejudicial as there is no indication that the ALJ's determination would have changed had he done so and substantial evidence supports the ALJ's mental RFC determination."). Because procedural perfection in an administrative proceeding is not required, and the ALJ's decision is supported by substantial evidence, the ALJ's application of the incorrect standard constitutes harmless error.

### C.     The Hypothetical Questions Posed to the Vocational Expert Were Adequate

Finally, Hayes argues that the ALJ's hypothetical questions to the vocational expert (VE) did not reasonably incorporate her disabilities of depression, hand limitations, pain, and visual impairment. Pl.'s Br. 14–18. She contends further that had the ALJ properly posed hypothetical questions to the expert, the ALJ would have found that she could not perform any work and is thus disabled. *Id.*

The Fifth Circuit applies the following test in determining whether an ALJ's hypothetical question produces reversible error:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions . . . a determination of non-disability based on such a defective question cannot stand.

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *see also Vaught v. Astrue*, 271 F. App'x 452, 455 (5th Cir. 2008) (citing the *Bowling* standard affirmatively).

In the proceeding below, the ALJ asked the VE if jobs existed in significant numbers in the national economy that could be done by someone: (1) with Hayes's age, education, and work history, with the ability to perform light work; (2) who needed to alternate standing and sitting at will; (3) who could perform occasional postural movements but could not climb ladders, ropes, or

scaffolds; (4) who could occasionally perform fingering and handling; (5) who could not be exposed to temperature extremes; and (6) who could do detailed but not complex tasks. Tr. 56–57. The VE responded that someone with those limitations could perform, for example, the jobs of bakery line worker, fruit distributor, and shipping and receiving weigher. Tr. 57. The ALJ also asked the expert whether sedentary jobs with the same restrictions existed in significant numbers in the national economy, and the vocational expert identified the jobs of telemarketer and information clerk. Tr. 57–58. Hayes's attorney then asked the VE the effect of a limitation to less than occasional repetitive use of the hands on the jobs he discussed, and the expert noted that no jobs could be performed with less than occasional hand use. Tr. 59.

The ALJ found that Hayes had the severe impairments of chronic lower back pain, obstructive sleep apnea, diabetes mellitus with peripheral neuropathy, carpal tunnel syndrome, hypertension, hypothyroidism, obesity, and major depression. Tr. 12. The ALJ accounted for these impairments when he incorporated Hayes's RFC into the hypothetical questions posed to the VE. Tr. 13, 56–57; *see also Reynaud v. Astrue*, 226 F. App'x 401, 404 (5th Cir. 2007) (holding that ALJ did not commit error when ALJ considered claimant's testimony and medical records to determine RFC, which was then included in hypothetical question). As discussed above, substantial evidence supports the ALJ's RFC assessment. Furthermore, Hayes's attorney was given the opportunity to suggest any purported defects in the ALJ's question, and the attorney used that opportunity to propose additional hand limitations. Tr. 59; *see Wise v. Barnhart*, 101 F. App'x 950, 951 (5th Cir. 2004) ("Thus, even assuming, arguendo, that the administrative law judge's hypothetical was deficient in the respects urged on appeal, because [claimant's] representative was afforded an opportunity to correct any perceived deficiencies, there is no reversible error."). Accordingly, the

15

ALJ's hypothetical questions did not constitute reversible error.

Specifically addressing Hayes's argument concerning her depression, the ALJ considered her mental condition and limitations in his RFC finding, despite sporadic mental health treatment or diagnoses. The crux of Hayes's argument here is that the ALJ insufficiently developed the record regarding her depression and therefore the hypothetical questions were inadequate. As previously discussed, however, the ALJ's decision regarding Hayes's mental limitations is supported by substantial evidence and was included in his RFC determination; thus, no harmful error exists.

Hayes also argues the ALJ did not properly incorporate her fingering and handling limitations in his hypothetical questions to the VE. Pl.'s Br. 16. The ALJ did consider Hayes's complaints of manipulative limitations, as reflected in the RFC assessment that she could only occasionally perform fingering and handling. Tr. 18. In response to questioning from Hayes's attorney, the VE testified there was no relevant work possible for Hayes if she required less than occasional use of her hands. Tr. 59. Nevertheless, due to the "lack of consistent findings" in the record, the ALJ did not believe any limitation other than occasional manipulative actions was warranted. Tr. 18; *see Anthony v. Sullivan*, 954 F.2d 289, 295–96 (5th Cir. 1992) (holding that a claimant's subjective medical complaints can be diminished by objective medical evidence). An ALJ may reject a VE's hypothetical testimony when the assumptions posed to the expert are not supported by the record. *Owens v. Heckler*, 770 F.2d 1276 , 1282 (5th Cir. 1985). Thus, the ALJ's assessment of Hayes's hand limitations is supported by substantial evidence in the record and there was no harmful error in the questions posed to the VE.

Hayes next argues that the ALJ erred by dismissing her complaints of pain. Pl.'s Br. 16–17. The issue of whether a claimant's subjective complaints of pain amount to a disabling condition is

within the discretion of the ALJ. *See Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). "[A] factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa*, 895 F.2d at 1024. Pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (quoting *Selders v. Sullivan*, 914 F.2d 614, 618–19 (5th Cir. 1990)). Here, the ALJ noted that despite Hayes's complaints of pain, the medical records were mostly unremarkable on the subject, treatment and medication "were at least partially effective," and she was able to work—albeit in a limited capacity—while experiencing this pain. Tr. 17–18. The ALJ nevertheless gave Hayes "the benefit of all possible doubt" in the RFC assessment and provided that she must alternate sitting and standing at will and be limited to a reduced range of sedentary work. Tr. 18. As previously noted, the ALJ's RFC decision regarding Hayes's pain is supported by substantial evidence in the record and therefore the hypothetical questions posed to the VE were adequate.

Hayes's final argument is that the hypothetical questions did not properly include her visual impairments. Pl.'s Br. 17–18. While he noted that Dr. Bergman identified "decreased bilateral visual acuity" during his consultative examination of Hayes, the ALJ did not incorporate visual limitations in the RFC assessment or the hypothetical questions posed to the VE. Tr. 16. As with the pain findings identified during Dr. Bergman's consultative examination, the record does not reflect Hayes's visual impairments were consistently treated, or that she consistently suffered from such an impairment. Tr. 18. Specifically, Hayes does not point to any other medical provider's opinion to establish she has a visual impairment. The ALJ is "entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly."

17

*Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). The ALJ's decision to disregard Dr. Bergman's note and not include visual limitations in Hayes's RFC is supported by substantial evidence because of the lack of a consistent treatment history in the medical record.

Hayes has not shown that the ALJ's hypothetical questions posed to the VE should have included greater limitations of any sort. The ALJ's decisions regarding Hayes's RFC and the hypothetical questions based on her RFC are supported by substantial evidence. The questions posed to and the testimony of the VE involve no prejudicial error.

## V.  Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court affirm the Commissioner's decision and dismiss Hayes's Complaint with prejudice.

## VI.  Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

18

Dated:  November 4, 2016

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE